ADDIE GRAY, Appellant, v. F. J. THONE et al., Appellees.

**CONSTITUTIONAL LAW:** Police Power—Harmful Barberry. The
1 state may validly authorize the destruction of a disease-breeding or disease-carrying plant, without compensation to the owner.

**EVIDENCE:** Opinion Evidence—Competency—Disease-Breeding Plant.
2 An expert may testify as to the manner in which a plant carries plant disease, and how such disease is transmitted to other plants.

**VENUE:** Residence—Assault and Battery. An action against several
3 resident defendants for a joint trespass upon the person may not be maintained in a county in which none of the defendants reside.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

SEPTEMBER 28, 1923.

COUNT 1 of the petition stated an action for alleged trespass by defendants' entering upon the premises of plaintiff and removing a certain barberry bush. In Counts 2 and 3 of the petition, causes of action were alleged, based on assault, which counts were stricken. Cause of action alleged in Count 1 was tried to a jury, resulting in a verdict for defendants. Motion for a new trial was overruled. Plaintiff appeals from the order overruling her motion for a new trial, and from the order of the court withdrawing from the jury causes of action alleged in Counts 1 and 2. Facts appear in the opinion.—*Affirmed.*

*Brown McCrary & John F. Urbany,* for appellant.

*Lee & Robb,* for appellees.

ARTHUR, J.—The cause of action alleged in Count 1 of the petition is based upon the removal by the defendants of a barberry bush from plaintiff's premises, on August 16, 1919. Defendants were duly appointed acting assistants to the state entomologist of Iowa. Defendant Joseph discovered the barberry bush in question, growing on the premises of plaintiff. Upon such discovery, Joseph served notice on the plaintiff to eradicate the bush, which notice is provided for by Chapter 8 of the Acts of the Thirty-eighth General Assembly. Plaintiff not complying with the said notice, and refusing to remove the bush, defendants removed the bush in question, proceeding under Chapter 8 of the Acts of the Thirty-eighth General Assembly. Whereupon, this action was commenced for damages. The action is based upon two principal grounds: (1) That the statute authorizing the removal of a barberry bush is unconstitutional; and (2) that the barberry bush destroyed was not the harmful variety of barberry bush denounced in the statute, but was, in fact, the harmless Japanese barberry, coming within the exception mentioned in the statute. The trial court, in various rulings made in the progress of the trial, held that the statute in question was not unconstitutional; and that the removal of the

bush, if found by the jury to be of a harmful variety of barberry, or an alternate host or carrier of a dangerous plant disease, was authorized by the statute. Accordingly, the cause of action alleged in Count 1 of the petition was submitted to the jury. The jury returned a verdict in favor of defendants.

I. The causes of action alleged in Counts 2 and 3 were based on claimed assaults upon plaintiff and her husband. Defendants, in various ways, through all stages of the case, attacked said counts, on the ground that the claims for damages growing out of the alleged assault were a personal action, which could only be brought in the county where one of the defendants resided. It appeared without dispute that defendant Thone was a resident of Polk County, Iowa, and that defendant Joseph was a resident of Story County, Iowa, where the action was commenced. Neither of defendants was ever a resident of Carroll County. At the close of the evidence, the court sustained a motion by the defendants to strike Counts 2 and 3 of the petition, holding that such causes of action were based on personal injuries alone, and that the district court of Carroll County had no jurisdiction thereof; that such personal actions were improperly joined with the cause of action declared in Count 1, and could only be maintained in the county of the residence of one of the defendants.

II. Plaintiff makes several assignments of error, all of which may be considered under three divisions:

(1) The claim of plaintiff that the statute under which defendants claim to have acted in the destruction of the barberry bush in question is unconstitutional.

(2) That the court erred in allowing defendants to testify to the relation of the harmful barberry to the disease known as "the black stem rust in wheat."

(3) That the court erred in striking Counts 2 and 3 from the petition.

The statute, Chapter 8 of the Acts of the Thirty-eighth General Assembly, as indicated, is a recently enacted statute, and this is the first time we have had occasion to consider it.

1. CONSTITUTIONAL LAW: police power: harmful barberry. Many states have similar statutes, and we have resorted to the decisions of the courts of such states in the consideration of plaintiff's chal-

lenge to the validity of our statute. The particular claim by counsel for appellant as to the statute, as we understand them, is that the proceeding authorized by the statute would be taking property without due process of law,—depriving a person of his property without hearing in court. Counsel for plaintiffs do not, in their argument, press their challenge to the constitutionality of the act with much vigor. The act complained of, so far as material to this investigation, reads:

"After notification by the state entomologist it shall be unlawful for any person * * * to * * * permit to exist on his or its premises any plant of the harmful barberry or any other plant that acts as an alternate host or carrier of a dangerous insect pest or plant disease. The term, harmful barberry, shall be interpreted to consist of any species of Berberis or Mahonia susceptible to infection by Puccinia graminis, commonly called Black Stem Rust of grain, but not including Japanese barberry (B. Thunbergii). It shall be the duty of the state entomologist and his assistants to enforce the provisions of this section, and he is hereby empowered to eradicate any such insect pest, plant disease or carrier of insect or plant disease. If the owner shall refuse or neglect to eradicate such pest or carrier, within ten days after receiving a written notice, the state entomologist shall eradicate or cause the same to be eradicated."

On examination of the authorities, we reach the conclusion that the act is not vulnerable to the attacks made upon it. Some of the cases holding, in effect, that the proceeding under the act in question is a warranted exercise of police power are *Balch v. Glenn*, 85 Kan. 735 (Ann. Cas. 1913 A 406); *County of Los Angeles v. Spencer*, 77 Am. St. 217; *Newark & S. O. Horse Car R. Co. v. Hunt*, 50 N. J. L. 308; *State v. Main*, 69 Conn. 123 (36 L. R. A. 623). Complete answer to appellant's challenge to our statute is found in the case of *Balch v. Glenn*, supra. The Kansas statute is too long to quote. The salient features are: The statute creates an entomological commission. The purposes of the act are the suppression and extermination of San José scale and other injurious insect pests and plant diseases. The entomologists, their assistants, and employees are authorized by the statute to enter upon the premises of any private individual and inspect, destroy, treat, or experiment upon insects or plant

disease. In case the officers mentioned in the statute or their employees shall find such insects or diseases to exist, they are required to give notice thereof to the owner. The act then provides that, if the owner or person in charge shall not, within ten days thereafter, destroy the diseased plant, the commission shall make such destruction, etc. The Kansas court held, in substance, that the statute created an entomological commission, and that providing for the extermination by such commission of a plant or tree infected or diseased with the San José scale and other orchard pests is a valid exercise of police power; that the statute is not invalid because it delegates to the commission the power to declare the existence of conditions which call into operation the provisions of the statute; that the legislature may declare that to be a nuisance which is detrimental to the health, morals, peace, or welfare of its citizens, and may confer power upon local boards or tribunals to exercise the police power of the state when, in the judgment of such tribunals, the conditions exist which the legislature has declared constituted such nuisance; and that "due process of law" does not necessarily mean a judicial proceeding or a special tribunal for the express purpose of hearing the merits of a particular controversy. In the opinion, the Kansas court said:

"The courts have universally recognized the distinction between the two powers [eminent domain and police power]. Under the exercise of the one, private property cannot be taken either for public or private use without compensation; in the exercise of the other, the use of property may be limited or controlled, or the property itself destroyed, without any compensation therefor being made to the owner. It is no objection to the validity of laws passed in the proper and lawful exercise of the police power that provision is not made for compensation to the individual whose property may be affected thereby. Property taken or destroyed for the purpose of abating a nuisance or to prevent the spreading of a pestilence is not taken for public use. All private property is held subject to such reasonable restraints and burdens as in the opinion of the legislature will secure and maintain the general welfare and prosperity of the state. It is held subject to the obligation that it shall not be used so as to affect injuriously the rights of the community. It belongs to

the legislative branch of the government 'to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety.' (*Mugler v. Kansas*, 123 U. S. 623, 661, 31 L. Ed. 205; *Missouri Pac. R. Co. v. Finley*, 38 Kan. 550, 16 Pac. 951.)''

The *Balch* case is cited with approval in *Wedemeyer v. Crouch*, 68 Wash. 14 (122 Pac. 366).

There are cases too numerous to require citation upholding the validity of statutes authorizing the destruction of domestic animals having infectious or contagious diseases, as an exercise of the police power. In the instant case, the question as to whether or not the bush in controversy was, in fact, a harmful species of barberry, and one which acted as an alternate host or carrier of the dangerous insect pests or plant diseases, was fairly and carefully submitted to the jury by the instructions.

III. Appellant complains that the defendants were permitted to testify, over her objections, to the relation of the bush in question to the disease known as the ''black stem rust in

2. EVIDENCE: opinion evidence: competency: disease-breeding plant.

wheat.'' Under the provisions of the statute, we think it was not error to permit the defendants, who qualified as entomologists, to testify to the process by which black stem rust completes its cycle through the harmful barberry, in order to determine whether the particular bush in question was one that comes within the provisions of the statute making it unlawful to permit to exist any plant which acts as an alternate host of the diseases in question. It is made the duty of the defendants, under the statute, to determine whether the bush in question came within the class of plants of which it was their duty to cause the eradication. We think that the testimony of defendants to show the nature of the disease in question and manner of its communication to other plants was properly received. Plaintiff had the privilege, and availed herself of it, to introduce testimony to show that the plant in question was of the Japanese variety, and not denounced by the statute.

IV. It is strenuously urged that the court erred in striking Counts 2 and 3 from the petition. As before stated, these counts were based on an alleged assault upon the plaintiff and her hus-

3. VENUE: resi-
dence: assault
and battery.
band, and for injury to some household property incurred during the affray on the Sunday following the destruction of the plant. Whatever occurred on this Sunday was entirely distinct and apart from the transaction involved in Count 1 of the petition. It appears that, on the day following the destruction of the plant, plaintiff's husband went to the hotel where the defendants were, and invited them to his house, for the purpose, as he said, of having them explain to him their act in destroying the bush. When they arrived at the home of plaintiff and her husband, an altercation ensued. Whatever took place at that time had no relation whatever to the performance of any duty on the part of defendants under the statute. There is no pretense that defendants were then acting in the eradication of the bush, or doing any other act within contemplation of the statute. Whatever occurred in the Gray home on Sunday was entirely disassociated, so far as official acts were concerned, from anything that had previously been done by the defendants in the eradication of the plant in question. We will not further discuss the affair which took place in the Gray home. The causes of action based on claimed assault are strictly personal actions. Manifestly, there was misjoinder of actions. The proper venue of the actions based on assault was either Polk County, where Thone lived, or Story County, where Joseph resided. It was not error to strike such causes of action.

We have examined the whole record carefully, and find no reversible error. The case is affirmed.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.